㉝

2-1-02

sc

FILED
HARRISBURG, PA

JAN 2 9 2002

MARY E. D'ANDREA, CLERK
Per _____

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SPENCER T. SMITH, ESQUIRE          *
53 Silverbrook Lane
North Granby, Connecticut  06060   *

　　Plaintiff,                     *       Civil Case No. 1-01-cv-794
                                            (Judge Rambo)
　　v.                             *

THE ESTATE OF FRANK A. CALABRESE*
Serve On Kathleen Calabrese, Executrix
c/o Michael T. Hannafan, Esquire   *
Michael T. Hannafan & Associates
1 East Wacker Drive                *
Suite 2710
Chicago, Illinois 60601            *

　　and                            *

KATHLEEN CALABRESE, Individually   *       JURY TRIAL DEMANDED
and as Executrix of the Estate of
Frank A. Calabrese                 *
13294 Old Mill Road
Waynesboro, Pennsylvania  17268    *

- 1 -

Serve On Kathleen Calabrese      *
c/o Michael T. Hannafan, Esquire
Michael T. Hannafan & Associates     *
1 East Wacker Drive
Suite 2710      *
Chicago, Illinois 60601
     *

    Defendants.
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Spencer T. Smith, Esquire ("Mr. Smith"), by his undersigned counsel, hereby sues the Estate of Frank A. Calabrese (the "Estate") and Kathleen Calabrese, individually and in her capacity as Executrix of the Estate ("Mrs. Calabrese"), and in support of his First Amended Complaint respectfully states as follows:

### THE PARTIES

1.     Mr. Smith is citizen of the State of Connecticut currently residing at 53 Silverbrook Lane, North Granby, Connecticut 06060. Mr. Smith is, and at all times herein mentioned was, an attorney specializing in patents, having received his Juris Doctor degree in 1968 from American University. Mr. Smith received a Bachelor of Mechanical Engineering degree in 1965 from The Cooper Union in New York City. Mr. Smith was admitted to the Bar of New York in 1969 and became a member of the U.S. Patent Bar in 1970.

2.     Frank A. Calabrese ("Mr. Calabrese") was an electrical engineer and friend of Mr. Smith. Mr. Calabrese died on February 14, 2000 in Waynesboro,

Pennsylvania. On March 21, 2000, Mr. Calabrese's Estate was opened in the Franklin County Court of Common Pleas, Chambersburg, Pennsylvania, captioned "In Re: Estate of Frank Calabrese," Estate No.: 28-2000-174.

3.    Mrs. Calabrese was the wife of Mr. Calabrese. After Mr. Calabrese's death, Mrs. Calabrese was appointed Executrix of the Estate. Mrs. Calabrese is a citizen of the Commonwealth of Pennsylvania and currently resides at 13294 Old Mill Road, Waynesboro, Pennsylvania 17268. Mrs. Calabrese has at various times held possessory interests in the patents which are the subject of this action.

<u>JURISDICTION AND VENUE</u>

4.    Jurisdiction of this action is proper under 28 U.S.C. §1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states.

5.    Venue in this action is proper under 28 U.S.C. §1391(a) in that the Estate is being administered in Franklin County, Pennsylvania, the Executrix resides in Waynesboro, Pennsylvania, and the attorney for the Estate is located in Chambersburg, Pennsylvania. This matter is assigned to the Middle District of the United States District Court for the District of Pennsylvania, pursuant to 28 U.S.C. §118(d).

<u>BACKGROUND</u>

6.    In September 1972, Mr. Smith was employed by Litton Industries Inc. as patent counsel for a number of its companies. One of the Litton Industries Inc.

companies was Landis Tool Company.   At that time, Mr. Calabrese was an electrical engineer with Landis Tool Company.   Through this professional relationship, Mr. Smith and Mr. Calabrese became friends.

7.    Subsequently, Mr. Calabrese left Landis Tool Company to work for Eaton Corporation in Frederick, Maryland.   Nevertheless, Mr. Smith and Mr. Calabrese remained friends.

8.    On a social occasion involving Mr. Calabrese's family and Mr. Smith in early 1980, Mr. Calabrese discussed with Mr. Smith a data relay system on which he had been independently working.

9.    During that conversation, Mr. Smith advised Mr. Calabrese that Mr. Calabrese's technology concerning the data relay system should be patented.   Mr. Calabrese stated to Mr. Smith that Mr. Calabrese never considered the data relay system to be patentable.   Applying his legal expertise, Mr. Smith informed Mr. Calabrese that the data relay system technology could, in fact, probably be patented and encouraged Mr. Calabrese to pursue a patent.

10.    Mr. Calabrese informed Mr. Smith that he, Mr. Calabrese, was not in a position to incur the costs of preparing and prosecuting a patent.   Nevertheless, Mr. Smith agreed he would prepare and prosecute a patent on the data relay system as well as any other technology Mr. Calabrese developed.   Viewing the pursuit as a joint venture, Mr. Smith and Mr. Calabrese agreed that if any of Mr. Calabrese's

inventions ever became commercially viable, Mr. Smith would share in any patent profits under a contingency agreement.

11.   Upon the consent and agreement of Mr. Calabrese, all related expenses incurred by Mr. Smith would be Mr. Calabrese's responsibility.

12.   On April 14, 1980, Mr. Smith filed two patent applications on the data relay system developed by Mr. Calabrese.   One issued into U.S. Patent No. 4,322,849 on March 30, 1982 and the second application ultimately issued into U.S. Patent No. 4,703,451 on October 27, 1987.

13.   In addition to the data relay system technology, Mr. Calabrese developed other technology worthy of patent protection.  As a result, Mr. Smith filed a third patent application on behalf of Mr. Calabrese for a Linear Energy Communicator.  This application dealt with the control of a motorized guided vehicle such as the type used in automated factories.  It was filed on January 21, 1986, and issued into U.S. Patent No. 5,113,962, on May 19, 1992.

14.   Before the third patent issued, another patent application, based on the January 21, 1978 application, for a Linear Energy Concentrator, was filed on April 16, 1992, which became U.S. Patent No. 5,429,203, on July 5, 1995.

15.   On February 8, 1993, Mr. Smith filed a fifth patent application for Mr. Calabrese.  This application which traced back to his guided vehicle patents, covered a Linear Energy Curtain which was used to define an invisible barrier to

limit the wandering of an animal.    This application issued into U.S. Patent No. 5,335,626, on August 9, 1994.

16.    On September 24, 1993, a sixth patent application, which was based on the fifth, was filed for an Animal Containment System.  This application issued into U.S. Patent No. 5,349,926, on September 27, 1994.

17.    On September 23, 1994, a seventh application, which was partially based on the sixth, was filed for an Animal Containment system.  This application issued into U.S. Patent No. 5,608,381, on March 4, 1997.

18.    On September 24, 1994, an eighth application, which was partially based on the fifth, was filed for an Animal Containment System.  This application ultimately issued into U.S. Patent No. 5,642,690, on July 1, 1997.  This was the last of Mr. Calabrese's patents to issue.

19.    From April 14, 1980, until July 1, 1997, Mr. Smith was prosecuting at least one of Mr. Calabrese's patent applications before the United States Patent Office.  Mr. Smith is still the attorney of record on these patents.

20.    As recently as January 23, 2001, Mr. Smith, as attorney of record of Mr. Calabrese's patents, provided advice to Mrs. Calabrese as Executrix of the Estate, as to legal requirements with regard to two of the issued patents.

21.    In 1995, Mr. Smith became aware of U.S. Patent No. 5,247,450, issued September 21, 1993, which discussed use of the data relay technology in an

actual machine.  Mr. Calabrese had made no efforts to commercialize the data relay technology since the grant of his patents.  Through his research, Mr. Smith confirmed that Mr. Calabrese's patent had been incorporated into an actual commercial product.  Mr. Smith forwarded to Mr. Calabrese a copy of U.S. Patent No. 5,247,450.  This patent was being utilized by APC Company.

22.    Upon review of U.S. Patent No. 5,247,450, Mr. Calabrese requested Mr. Smith to begin negotiations with APC Company, which Mr. Smith did.

23.    APC Company was thereafter acquired by Square D Company.  For approximately one year, Mr. Smith conducted negotiations with Square D Company's attorneys regarding Mr. Calabrese's claim of infringement. Ultimately, a meeting was held in Chicago among Mr. Smith, Mr. Calabrese, and Square D Company wherein Mr. Calabrese offered to sell his data relay patents to Square D Company for $14 million.  Square D Company rejected Mr. Calabrese's offer.

24.    Mr. Smith was professionally acquainted with one of the country's outstanding patent litigators, Raymond P. Niro, Esquire ("Mr. Niro"), of the firm Niro, Scavone, Haller & Niro.  Mr. Niro successfully handled a number of patent lawsuits for Mr. Smith in the past.  Mr. Smith contacted Mr. Niro and requested that Mr. Niro accept representation of Mr. Calabrese's case involving Square D and Mr. Calabrese's data relay patents.

25.    In 1996, Mr. Smith arranged for a meeting among Mr. Smith, Mr. Calabrese and Mr. Niro in Pittsburgh, Pennsylvania to review an infringement action against Square D Company on Mr. Calabrese's behalf.  At the end of the meeting, after a presentation by Mr. Smith, Mr. Niro agreed to represent Mr. Calabrese against Square D Company.  Mr. Niro agreed to handle Mr. Calabrese's infringement case on a contingency fee basis of 45% of the gross recoveries.

26.    Following the meeting with Mr. Niro and Mr. Calabrese in Pittsburgh, Mr. Smith raised the topic of memorializing his agreement with Mr. Calabrese. Mr. Smith said that he thought that 30% of any net recovery (16.5% of the gross) from any data relay patents would be appropriate.    Initially, Mr. Calabrese objected, saying that he believed Mr. Smith was entitled to more.  It was, Mr. Smith's belief at that time that Mr. Calabrese intended to share recoveries on a 50/50 split since Mr. Calabrese considered Mr. Smith to be as a partner.  Mr. Smith said that 30% of the net recoveries was satisfactory to him, to which Mr. Calabrese readily agreed.  A written contract formalizing their agreement, dated July 5, 1996, was signed by Mr. Smith and Mr. Calabrese in Pennsylvania (the "Contract").  Specifically, the Contract provided,

> This letter will memorialize the agreement between us concerning the legal services that I have rendered and shall render with regard to the securing and enforcement of your Data Relay patents.  Such services have been provided on a contingency basis with compensation to be paid as a percentage (30) of any net recoveries by you as a result of any licenses, negotiations, settlements,

judgments, or otherwise that directly or indirectly involve these patents.

A true and complete copy is of the contract is attached hereto as **Exhibit 1**.

27.    Litigation was commenced by Mr. Calabrese against Square D Company in 1997.

28.    On or about January 12, 2000 Frank A. Calabrese assigned a one-half (1/2) interest in U.S. Patent No. 4,322,849 to Kathleen Calabrese.

29.    In January 2000, a jury in Chicago, Illinois awarded Mr. Calabrese $13.9 million on the data relay patents, which was subsequently raised by the court to almost $20 million. Upon return of the jury verdict, Mr. Calabrese called Mr. Smith, excited, delighted and thanking Mr. Smith, informing him that both he and Mr. Smith were going to be "rich." Within weeks, however, Mr. Calabrese, who had fought cancer for a number of years, was dead.

30.    Mr. Calabrese's Estate was opened on March 21, 2000. Mrs. Calabrese was named Executrix of the Estate.

31.    On or about April 27, 2000 Kathleen Calabrese, Executor of the Estate of Frank A. Calabrese, assigned to herself individually an undivided interest in U.S. Patent No. 4,703,451.

32.    Upon information and belief, the Estate has received from Square D Company and other licensees of the data relay patents, the gross sum of approximately $7 million. Mr. Niro has deducted his 45% contingency fee and

expenses from this gross sum.  Mr. Smith has not received any portion of the net recovery.

33.    Upon information and belief, the Estate has received the sum, after fees and other expenses, of approximately $3,100,000, with an additional sum of $1,500,000 scheduled for payment by Square D Company to the Estate in two equal installments in July 2001 and January 2002.  Mr. Smith has not received any portion of the net recovery.

34.    Further lawsuits have been instituted by Mr. Niro against Echelon Corporation and Robert Bosch Corporation, charging infringement of the data relay patents.  A substantial recovery to the Estate is expected from these actions, as well as any future litigation or license arrangement that may arise.

35.    From approximately 1980 to date, Mr. Smith recognized Mr. Calabrese's technology, successfully prepared and prosecuted Mr. Calabrese's patents, identified patent infringement, identified and recommended trial counsel, and assisted, when requested, with the patent litigation.  Despite the existence of the Contract, Mr. Smith has received no share in the patent recovery.

36.    Mr. Smith requested from Mrs. Calabrese as Executrix of the Estate, payment under his July 5, 1996 contract with Mr. Calabrese.  In response to Mr. Smith's request for payment, he was contacted by Michael T. Hannafan & Associates, Ltd. on behalf of Mrs. Calabrese and the Estate, who acknowledge his Contract and inquired, "whether you would be willing to extend her [Mrs.

Calabrese] the courtesy of considering something less than a full 30% fee as reflected in your fee agreement". While the Estate and Mrs. Calabrese indicated it was "grateful for the legal services which had been" performed for Mr. Calabrese, the Estate and Mrs. Calabrese sought to compromise the fee of Mr. Smith. A true and correct copy of Mr. Hannafan's letter of December 5, 2000, is attached as **Exhibit 2**.

37.   To date, Mrs. Calabrese and the Estate have refused to pay any fees owed under the Contract to Mr. Smith, and as will be incurred in the future.

**COUNT I**
(BREACH OF CONTRACT)

38.   Mr. Smith incorporates the allegations contained in Paragraphs 1 through 37 as though fully set forth herein.

39.   Mr. Smith and Mr. Calabrese entered into the Contract for the share in patent profits resulting from the services provided to Mr. Calabrese by Mr. Smith. Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents.

40.   Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

41.   Mrs. Calabrese and Estate have breached the Contract by failing to compensate Mr. Smith in accordance with the terms of the Contract.

42.   As a result of Mrs. Calabrese and the Estate's breach, Mr. Smith has suffered damages in an amount in excess of $75,000.00.

WHEREFORE, Mr. Smith demands judgment against Mrs. Calabrese and the Estate in an amount to be proven at trial in excess of $75,000.00, plus his costs, pre-judgment interest, attorneys' fees and such other and further relief as the nature of his cause may require.

## COUNT II
### (ANTICIPATORY BREACH)

43.    Mr. Smith incorporates the allegations contained in Paragraphs 1 through 42 as though fully set forth herein.

44.    Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents.

45.    Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

46.    Despite repeated requests for compensation in accordance with the Contract, Mrs. Calabrese and the Estate have advised Mr. Smith in positive and unconditional language that they intend to refuse to accept the terms of the Contract and refuse to make not only any current but also any future payments as required under the terms of the Contract, thereby anticipatorily breaching the Contract.

47.    As a result of Mrs. Calabrese and the Estate's anticipatory breach, Mr. Smith has suffered damages in an amount in excess of $75,000.00.

WHEREFORE, Mr. Smith demands judgment against Mrs. Calabrese and the Estate in an amount to be proven at trial in excess of $75,000.00, plus his costs,

attorneys' fees and such other and further relief as the nature of his cause may require.

## COUNT III
### (UNJUST ENRICHMENT)

48.    Mr. Smith incorporates the allegations contained in Paragraphs 1 through 47 as though fully set forth herein.

49.    Mr. Smith has worked on Mr. Calabrese's behalf concerning the data relay and other patents for over 20 years.

50.    The legal services provided by Mr. Smith to Mr. Calabrese conferred a benefit upon Mr. Calabrese in an amount in excess of $75,000.00.

51.    Mr. Calabrese, his Estate, and Mrs. Calabrese were aware of, and had knowledge of, the benefits conferred upon Mr. Calabrese and subsequently his Estate.

52.    The Estate and Mrs. Calabrese's acceptance and retention of the services provided by Mr. Smith, and the benefits resulting therefrom make it inequitable for the Estate and Mrs. Calabrese to retain those benefits without payment of their value.

WHEREFORE, Mr. Smith demands judgment against Mrs. Calabrese and the Estate in an amount to be proven at trial in excess of $75,000.00, plus his costs, interest, attorneys' fees and such other and further relief as the nature of his cause may require.

## COUNT IV
### (CONVERSION)

53.    Mr. Smith incorporates the allegations contained in Paragraphs 1 through 52 as though fully set forth herein.

54.    Mr. Smith and Mr. Calabrese entered into the Contract for the payment of services provided to Mr. Calabrese by Mr. Smith. Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents.

55.    Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

56.    Mrs. Calabrese, as Executrix of the Estate of Mr. Calabrese, was made aware of the existing Contract between Mr. Smith and Mr. Calabrese and has acknowledged the same in **Exhibit 2.**

57.    Mrs. Calabrese, as Executrix of the Estate of Mr. Calabrese, is under an obligation to fulfill the Contract made between Mr. Calabrese and Mr. Smith.

58.    The Estate and Mrs. Calabrese are currently in possession of money legally and justly owed to Mr. Smith under the Contract.

59.    The retention of such sums by the Estate and Mrs. Calabrese, which are justly and legally due Mr. Smith, was not previously agreed upon, was intentional, without permission or justification, and constitutes conversion of Mr. Smith's property.

60.     As a result of Mrs. Calabrese and the Estate's conversion of Mr. Smith's property, Mr. Smith has suffered damages in an amount in excess of $75,000.00.

WHEREFORE, Mr. Smith demands judgment against Mrs. Calabrese and the Estate in an amount to be proven at trial in excess of $75,000.00, plus his costs, interest, attorneys' fees and such other and further relief as the nature of his cause may require.

## COUNT V
### (ACCOUNTING)

61.     Mr. Smith incorporates the allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

62.     On or about March 21, 2001, Mrs. Calabrese was appointed Executrix of the Estate of Mr. Calabrese.

63.     Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents, for Mr. Smith's legal services rendered.

64.     At the time of Mr. Calabrese's death, there was due and owing to Mr. Smith compensation of 30% of all net judgments and settlements received by Mr. Calabrese with respect to his data relay patents.  Since Mr. Calabrese's death, there is due and owing 30% of all net judgments and settlements received by the Estate with respect to Mr. Calabrese's data relay patents.

65.    Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

66.    Mrs. Calabrese and Estate have failed to compensate Mr. Smith in accordance with the terms of the Contract, and have failed to provide a full and proper accounting of all sums received by the Estate arising from the data relay patents.

67.    Since Mrs. Calabrese's appointment as Executrix of the Estate, Mr. Smith has repeatedly requested payment and an accounting of the foregoing sums. Defendant Mrs. Calabrese has refused without reason or justification to make any attempt to pay Mr. Smith his just compensation, or to make a full accounting of the sums above described.

WHEREFORE, Mr. Smith demands that:  (a) Mrs. Calabrese be ordered to fully and completely account for all sums received by Mr. Calabrese or his Estate as a result of the data relay patents; and (b) judgment against Mrs. Calabrese and the Estate in the sum found to be due to Mr. Smith on such accounting, with interest together with the costs and disbursements of this action; and (c) Mr. Smith have such other and further relief as may be just and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mr. Smith

demands a jury trial on all counts in this First Amended Complaint.

DATED: _____

Respectfully submitted,

Jack M. Stover
Attorney I.D. #18051
P. Kevin Brobson
Attorney I.D.#76693
BUCHANAN INGERSOLL
PROFESSIONAL CORPORATION
213 Market Street, 3rd Floor
Harrisburg, PA 17101
(717) 237-4800

Gary C. Duvall
MILES & STOCKBRIDGE, P.C.
600 Washington Avenue, Suite 300
Towson, Maryland  21204
(410) 821-6565

*Attorney for the Plaintiff*