FILED
HARRISBURG, PA

FEB 2 8 2002

MARY E. D'ANDREA, CLER
Per
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SPENCER T. SMITH, ESQUIRE, | ) |
| | ) |
| Plaintiff, | ) No: 01 CV 794 |
| | ) |
| v. | ) (Judge Rambo) |
| | ) |
| THE ESTATE OF FRANK A. CALABRESE | ) |
| and KATHLEEN CALABRESE,  Executrix | ) |
| of the Estate of Frank A. Calabrese and | ) JURY TRIAL DEMANDED |
| KATHLEEN CALABRESE, Individually, | ) |
| | ) |
| Defendants. | ) |

## ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES

Defendants The Estate of Frank A. Calabrese, Kathleen Calabrese, Executrix of the Estate of Frank A. Calabrese and Kathleen Calabrese, Individually, state in answer to the First Amended Complaint:

### THE PARTIES

1.      Mr. Smith is a citizen of the State of Connecticut currently residing at 53 Silverbrook Lane, North Granby, Connecticut, 06060.  Mr. Smith is, and at all times herein mentioned was, an attorney specializing in patents, having received his Juris Doctor degree in 1968 from American University.  Mr. Smith received a Bachelor of Mechanical Engineering degree in 1965 from The Cooper Union in New York City.  Mr. Smith was admitted to the Bar of New York in 1969 and became a member of the U.S. Patent Bar in 1970.

**ANSWER:**    Admitted.

2.      Frank A. Calabrese ("Mr. Calabrese") was an electrical engineer and friend of Mr. Smith.  Mr. Calabrese died on February 14, 2000, in Waynesboro, Pennsylvania.  On March 21,

2000, Mr. Calabrese's Estate was opened in the Franklin County Court of Common Pleas, Chambersburg, Pennsylvania, captioned "In Re: Estate of Frank Calabrese," Estate No: 28-2000-174.

   **ANSWER:**   Admitted.

   3.   Mrs. Kathleen Calabrese was the wife of Mr. Calabrese.  After Mr. Calabrese's death, Mrs. Calabrese was appointed Executrix of the Estate.  Mrs. Calabrese is a citizen of the Commonwealth of Pennsylvania and currently resides at 13294 Old Mill Road, Waynesboro, Pennsylvania, 17268.  Mrs. Calabrese has at various times held possessory interests in the patents which are the subject of this action.

   **ANSWER:**   Admitted.

## JURISDICTION AND VENUE

   4.   Jurisdiction of this action is proper under 28 U.S.C. §1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states.

   **ANSWER:**   Admitted.

   5.   This District is the proper venue in this action under 28 U.S.C. §1391(a), in that the Estate is being administered in Franklin County, Pennsylvania, the Executrix resides in Waynesboro, Pennsylvania, and the attorney for the Estate is located in Chambersburg, Pennsylvania -- all of which lie in the Middle District of Pennsylvania, 28 U.S.C. §118(d).

   **ANSWER:**   Admitted.

## BACKGROUND

   6.   In September 1982, Mr. Smith was employed by Litton Industries Inc. as patent

counsel for a number of its companies.  One of the Litton Industries Inc. companies was Landis

Tool Company.  At that time, Mr. Calabrese was an electrical engineer with Landis Tool

Company.  Through this professional relationship, Mr. Smith and Mr. Calabrese became friends.

> **ANSWER:**    Defendants deny that Mr. Calabrese was employed at Landis Tool
>
> Company in 1982.  Defendants admit the remaining allegations of
>
> Paragraph 6.

7.    Subsequently, Mr. Calabrese left Landis Tool Company to work for Eaton

Corporation in Frederick, Maryland.  Nevertheless, Mr. Smith and Mr. Calabrese remained

friends.

> **ANSWER:**    Defendants deny that Mr. Calabrese left Landis Tool Company to work
>
> for Eaton Corporation but state that Mr. Calabrese left Landis Tool
>
> Company to work for ACCO, Inc..  Defendants admit the allegations of the
>
> second sentence of Paragraph 7.

8.    On a social occasion involving Mr. Calabrese's family and Mr. Smith in early 1980,

Mr. Calabrese discussed with Mr. Smith a data relay system on which he had been independently

working.

> **ANSWER:**    Defendants are without information or knowledge sufficient to form a
>
> belief as to the truth of Paragraph 8.

9.    During that conversation, Mr. Smith advised Mr. Calabrese that Mr. Calabrese's

technology concerning the data relay system should be patented.  Mr. Calabrese stated to Mr.

Smith that Mr. Calabrese never considered the data relay system to be patentable.  Applying his

legal expertise, Mr. Smith informed Mr. Calabrese that the data relay system technology could, in

- 3 -

fact, probably be patented and encouraged Mr. Calabrese to pursue a patent.

> **ANSWER:**   Defendants are without information or knowledge sufficient to form a
>
> belief as to the truth of Paragraph 9.

10.    Mr. Calabrese informed Mr. Smith that he, Mr. Calabrese, was not in a position to incur the costs of preparing and prosecuting a patent.  Nevertheless, Mr. Smith agreed he would prepare and prosecute a patent on the data relay system as well as any other technology Mr. Calabrese developed.  Viewing the pursuit as a joint venture, Mr. Smith and Mr. Calabrese agreed that if any of Mr. Calabrese's inventions ever became commercially viable, Mr. Smith would share in any patent profits under a contingency agreement.

> **ANSWER:**   Defendants are without information or knowledge sufficient to form a
>
> belief as to the truth of the first and second sentences of Paragraph 10.
>
> Defendants deny the third sentence and further deny that there was ever a
>
> joint venture or joint venture agreement between Mr. Smith and Mr.
>
> Calabrese.

11.    Upon the consent and agreement of Mr. Calabrese, all related expenses incurred by Mr. Smith would be Mr. Calabrese's responsibility.

> **ANSWER:**   Defendants are without information or knowledge sufficient to form a
>
> belief as to the truth of Paragraph 11.

12.    On April 14, 1980, Mr. Smith filed two patent applications on the data relay system developed by Mr. Calabrese.  One issued into U.S. Patent No. 4,322,849 on March 30, 1982, and the second application ultimately issued into U.S. Patent No. 4,703,451 on October 27, 1987.

- 4 -

**ANSWER:**    Admitted.

13.    In addition to the data relay system technology, Mr. Calabrese developed other technology worthy of patent protection.  As a result, Mr. Smith filed a third patent application on behalf of Mr. Calabrese for a Linear Energy Communicator.  This application dealt with the control of a motorized guided vehicle such as the type used in automated factories.  It was filed on January 21, 1986, and issued into U.S. Patent No. 5,113,962 on May 19, 1992.

**ANSWER:**    Admitted.

14.    Before the third patent issued, another patent application, based on the January 21, 1978 application, for a Linear Energy Concentrator, was filed on April 16, 1992, which became U.S. Patent No. 5,429,203 on July 5, 1995.

**ANSWER:**    Defendants state that a patent application for a Linear Energy Concentrator was filed and became U.S. Patent No. 5,429,203 on July 4, 1995. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14.

15.    On February 8, 1993, Mr. Smith filed a fifth patent application for Mr. Calabrese. This application which traced back to his guided vehicle patents, covered a Linear Energy Curtain which was used to define an invisible barrier to limit the wandering of an animal.  This application issued into U.S. Patent No. 5,335,626 on August 9, 1994.

**ANSWER:**    Admitted.

16.    On September 24, 1993, a sixth patent application, which was based on the fifth, was filed for an Animal Containment System.  This application issued into U.S. Patent No. 5,349,926 on September 27, 1994.

- 5 -

**ANSWER:**    Admitted.

17.    On September 23, 1994, a seventh application, which was partially based on the sixth, was filed for an Animal Containment System. This application issued into U.S. Patent No. 5,608,381 on March 4, 1997.

**ANSWER:**    Admitted.

18.    On September 24, 1994, an eighth application, which was partially based on the fifth, was filed for an Animal Containment System. This application ultimately issued into U.S. Patent No. 5,642,690 on July 1, 1997. This was the last of Mr. Calabrese's patents to issue.

**ANSWER:**    Admitted.

19.    From April 14, 1980 until July 1, 1997, Mr. Smith was prosecuting at least one of Mr. Calabrese's patent applications before the United States Patent Office. Mr. Smith is still the attorney of record on these patents.

**ANSWER:**    Defendants are without information or knowledge sufficient to form a belief as to the truth of the first sentence of Paragraph 19 and deny the allegations contained in the second sentence of Paragraph 19.

20.    As recently as January 23, 2001, Mr. Smith, as attorney of record of Mr. Calabrese's patents, provided advice to Mrs. Calabrese as Executrix of the Estate, as to legal requirements with regard to two of the issued patents.

**ANSWER:**    Defendants admit that Mr. Smith sent a letter to Mrs. Calabrese dated January 23, 2001 with enclosures concerning certain patents held by the Estate and Mrs. Calabrese from the United States Patent Office dated September 26, 2000. Defendants deny the remaining allegations of

- 6 -

Paragraph 20.

21.     In 1995, Mr. Smith became aware of U.S. Patent No. 5,247,450 issued September 21, 1993, which discussed use of the data relay technology in an actual machine.  Mr. Calabrese had made no efforts to commercialize the data relay technology since the grant of his patents. Through his research, Mr. Smith confirmed that Mr. Calabrese's patent had been incorporated into an actual commercial product.  Mr. Smith forwarded to Mr. Calabrese a copy of U.S. Patent No. 5,247,450.  This patent was being utilized by APC Company.

> **ANSWER:**     Defendants deny the allegations contained in the second sentence of Paragraph 21.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21.

22.     Upon review of U.S. Patent No. 5,247,450, Mr. Calabrese requested Mr. Smith to begin negotiations with APC Company, which Mr. Smith did.

> **ANSWER:**     Defendants are without information or knowledge sufficient to form a belief as to the truth of Paragraph 22.

23.     APC Company was thereafter acquired by Square D Company.  For approximately one year, Mr. Smith conducted negotiations with Square D Company's attorneys regarding Mr. Calabrese's claim of infringement.  Ultimately, a meeting was held in Chicago among Mr. Smith, Mr. Calabrese and Square D Company wherein Mr. Calabrese offered to sell his data relay patents to Square D Company for $14 million.  Square D Company rejected Mr. Calabrese's offer.

> **ANSWER:**     Admit that APC Company was acquired by Square D Company. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 23.

24.     Mr. Smith was professionally acquainted with one of the country's outstanding patent litigators, Raymond P. Niro, Esquire ("Mr. Niro"), of the firm Niro, Scavone, Haller & Niro.  Mr. Niro successfully handled a number of patent lawsuits for Mr. Smith in the past.  Mr. Smith contacted Mr. Niro and requested that Mr. Niro accept representation of Mr. Calabrese's case involving Square D and Mr. Calabrese's data relay patents.

**ANSWER:**    Admit but state that Mr. Niro and his firm represented Mr. Smith's

corporate employers rather than Mr. Smith individually.

25.     In 1996, Mr. Smith arranged for a meeting among Mr. Smith, Mr. Calabrese and Mr. Niro in Pittsburgh, Pennsylvania to review an infringement action against Square D Company on Mr. Calabrese's behalf.  At the end of the meeting, after a presentation by Mr. Smith, Mr. Niro agreed to represent Mr. Calabrese against Square D Company.  Mr. Niro agreed to handle Mr. Calabrese's infringement case on a contingency fee basis of 45% of the gross recoveries.

**ANSWER:**    Admit that Mr. Calabrese, Mr. Smith and Mr. Niro attended

a meeting in Pittsburgh, Pennsylvania to review a possible infringement

action against Square D Company on Mr. Calabrese's behalf.  Admit that

Mr. Niro, on behalf of the Niro firm, agreed to represent Mr. Calabrese

against Square D Company.   Defendants state that Mr. Niro's contingency

fee agreement was based upon a graduated scale and that a 45%

contingency fee was the highest

rate subject to certain conditions.   Defendants are without information or

knowledge sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 25.

- 8 -

26.    Following the meeting with Mr. Niro and Mr. Calabrese in Pittsburgh, Mr. Smith raised the topic of memorializing his agreement with Mr. Calabrese.  Mr. Smith said that he thought that 30% of any net recovery (16.5% of the gross) from any data relay patents would be appropriate.  Initially, Mr. Calabrese objected, saying that he believed Mr. Smith was entitled to more.  It was, Mr. Smith's belief at that time that Mr. Calabrese intended to share recoveries on a 50/50 split since Mr. Calabrese considered Mr. Smith to be as a partner.  Mr. Smith said that 30% of the net recoveries was satisfactory to him, to which Mr. Calabrese readily agreed.  A written contract formalizing their agreement, dated July 5, 1996, was signed by Mr. Smith and Mr. Calabrese in Pennsylvania (the "Contract").  Specifically, the Contract provided:

> This letter will memorialize the agreement between us concerning the legal services that I have rendered and shall render with regard to the securing and enforcement of your Data Rely patents.  Such services have been provided on a contingency basis with compensation to be paid as a percentage (30) of any net recoveries by you as a result of any licenses, negotiations, settlements, judgments or otherwise that directly or indirectly involve these patents.

A true and complete copy of the contract is attached hereto as Exhibit 1.

**ANSWER:**    Defendants admit that Exhibit 1 is a copy of a document dated July 5, 1996, signed by plaintiff and Mr. Calabrese and that the quoted language is an accurate quote.  Defendants deny that there was any valid or enforceable agreement or contract including Exhibit 1, between Mr. Calabrese and Mr. Smith at any time.  Defendants further deny that there was ever a joint venture or joint venture agreement between Mr. Smith and Mr. Calabrese.  Defendants further deny that Mr. Calabrese believed that

Mr. Smith was entitled to more than 30% of any net recovery. Defendants deny the remaining allegations of paragraph 26.

27.    Litigation was commenced by Mr. Calabrese against Square D Company in 1997.

**ANSWER:**    Defendants admit the allegation contained in Paragraph 27 and state that the law firm of Niro, Scavone, Haller & Niro alone represented Mr. Calabrese in the Square D litigation.

28.    On or about January 12, 2000, Frank A. Calabrese assigned a one-half (1/2) interest in U.S. Patent No. 4,322,849 to Kathleen Calabrese.

**ANSWER:**    Admitted.

29.    In January 2000, a jury in Chicago, Illinois awarded Mr. Calabrese $13.9 million on the data relay patents, which was subsequently raised by the court to almost $20 million. Upon return of the jury verdict, Mr. Calabrese called Mr. Smith, excited, delighted and thanking Mr. Smith, informing him that both he and Mr. Smith were going to be "rich." Within weeks, however, Mr. Calabrese, who had fought cancer for a number of years, was dead.

**ANSWER:**    Admit that a jury in Chicago awarded Mr. Calabrese several million dollars in January 2000, and state that judgment was entered for about $20 million against Square D Company. Defendants deny the remaining allegations contained in the first sentence of Paragraph 29. Defendants deny the allegations contained in the second sentence of Paragraph 29. Defendants admit the allegations in the third sentence of Paragraph 29.

30.    Mr. Calabrese's Estate was opened on March 21, 2000. Mrs. Calabrese was named Executrix of the Estate.

- 10 -

**ANSWER:**   Admitted.

31.   On or about April 27, 2000, Kathleen Calabrese, Executor of the Estate of Frank A. Calabrese, assigned to herself individually an undivided interest in U.S. Patent No. 4,703,451.

**ANSWER:**   Admitted.

32.   Upon information and belief, the Estate has received from Square D Company and other licensees of the data relay patents, the gross sum of approximately $7 million.  Mr. Niro has deducted his 45% contingency fee and expenses from this gross sum.  Mr. Smith has not received any portion of the net recovery.

> **ANSWER:**   Defendants state that the recoveries were and are confidential but state that more than $1 million have been recovered.   Defendants admit that Mr. Smith has not received any portion of the recovery from the Square D Company litigation.  Defendants deny Mr. Niro deducted a 45% contingency fee and expenses from the recovery amount, but state that a contingency fee and certain expenses were deducted from the recovery amounts.

33.   Upon information and belief, the Estate has received the sum, after fees and other expenses, of approximately $3,100,000, with an additional sum of $1,500,000 scheduled for payment by Square D Company to the Estate in two equal installments in July 2001 and January 2002.  Mr. Smith has not received any portion of the net recovery.

> **ANSWER:**   Defendants state that the recovery amounts from the Square D litigation were and are confidential but state that more than $1 million has  been recovered from the Square D Company.  Defendants further admit that Mr.

- 11 -

Smith has not received any portion of the recovery.

34.    Further lawsuits have been instituted by Mr. Niro against Echelon Corporation and Robert Bosch Corporation, charging infringement of the data relay patents. A substantial recovery to the Estate is expected from these actions, as well as any future litigation or license arrangement that may arise.

> **ANSWER:**    Defendants state that the law firm of Niro, Scavone, Haller & Niro instituted lawsuits against Echelon Corporation and Robert Bosch Corporation, charging infringement of U.S. Patent No. 4,322,849. Defendants deny the allegations contained in the second sentence of Paragraph 34 but defendants state that they are hopeful there will be future recoveries.

35.    From approximately 1980 to date, Mr. Smith recognized Mr. Calabrese's technology, successfully prepared and prosecuted Mr. Calabrese's patents, identified patent infringement, identified and recommended trial counsel, and assisted, when requested, with the patent litigation. Despite the existence of the Contract, Mr. Smith has received no share in the patent recovery.

> **ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to whether Mr. Smith recognized Mr. Calabrese' technology. Defendants admit that Mr. Smith participated in the preparation and prosecution of certain patents held by Mr. Calabrese. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Mr. Smith identified patent

- 12 -

infringement claims. Defendants admit that Mr. Smith recommended the law firm of Niro, Scavone, Haller & Niro to Mr. Calabrese. Defendants deny that Mr. Smith assisted with the patent litigation conducted by Niro, Scavone, Haller & Niro. Defendants deny the existence of any valid or enforceable contract as alleged in Paragraph 35. Defendants admit that Mr. Smith has not received any portion of the recovery amount from the Square D litigation. Defendants deny the remaining allegations of Paragraph 35.

36.    Mr. Smith requested from Mrs. Calabrese as Executrix of the Estate, payment under his July 5, 1996, contract with Mr. Calabrese. In response to Mr. Smith's request for payment, he was contacted by Michael T. Hannafan & Associates, Ltd. on behalf of Mrs. Calabrese and the Estate, who acknowledges his Contract and inquired, "whether you would be willing to extend her [Mrs. Calabrese] the courtesy of considering something less than a full 30% fee as reflected in your fee agreement." While the Estate and Mrs. Calabrese indicated it was "grateful for the legal services which had been" performed for Mr. Calabrese, the Estate and Mrs. Calabrese sought to compromise the fee of Mr. Smith. A true and correct copy of Mr. Hannafan's letter of December 5, 2000, is attached as Exhibit 2.

**ANSWER:**    Defendants admit that Mr. Smith requested payment under Exhibit 1 but deny that there was ever any valid and enforceable contract as alleged in Paragraph 36. Defendants admit that Michael T. Hannafan, an attorney for defendants, contacted Mr. Smith but deny that Mr. Smith's alleged "Contract" was "acknowledged" in Exhibit 2 and deny that the

- 13 -

alleged "Contract" was valid and enforceable.  Defendants further state that
Mr. Hannafan's contact of Mr. Smith was for the purpose of discussing
settlement of his claim.  Defendants admit that defendants sought to
compromise Mr. Smith's claimed attorney's fees.  Defendants state that
Exhibit 2 speaks for itself and no further answer is required.  Defendants
further state that Exhibit 2 constitutes a polite settlement offer made for the
purpose of resolving Mr. Smith's claim for payment and state that Exhibit 2
is irrelevant and inadmissible at trial under Federal Evidence Rule 408.
Defendants deny the remaining allegations of Paragraph 36.

37.    To date, Mrs. Calabrese and the Estate have refused to pay any fees owed under
the Contract to Mr. Smith, and as will be incurred in the future.

    **ANSWER:**    Defendants deny that there is or was any valid and enforceable contract
between Mr. Smith and Mr. Calabrese.  Defendants also deny that any fee
is owed under the alleged contract but state that they offered a substantial
settlement payment to Mr. Smith which was refused.

## COUNT I
### (Breach of Contract)

38.    Mr. Smith incorporates the allegations contained in Paragraphs 1 through 37 as
though fully set forth herein.

    **ANSWER:**    Defendants incorporate their answers to Paragraphs 1 through 37 as
set forth herein.

39.    Mr. Smith and Mr. Calabrese entered into the Contract for the share in patent

- 14 -

profits resulting from the services provided to Mr. Calabrese by Mr. Smith. Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents.

**ANSWER:** Denied.

40. Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

**ANSWER:** Denied.

41. Mrs. Calabrese and the Estate have breached the Contract by failing to compensate Mr. Smith in accordance with the terms of the Contract.

**ANSWER:** Denied.

42. As a result of Mrs. Calabrese and the Estate's breach, Mr. Smith has suffered damages in an amount in excess of $75,000.00.

**ANSWER:** Denied.

## COUNT II

### (Anticipatory Breach)

43. Mr. Smith incorporates the allegations contained in Paragraphs 1 through 42 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraphs 1 through 42 as set forth herein.

44. Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents.

**ANSWER:** Denied.

- 15 -

45.     Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

**ANSWER:**     Denied.

46.     Despite repeated requests for compensation in accordance with the Contract, Mrs. Calabrese and the Estate have advised Mr. Smith in positive and unconditional language that they intend to refuse to accept the terms of the Contract and refuse to make not only any current but also any future payments as required under the terms of the Contract, thereby anticipatorily breaching the Contract.

**ANSWER:**     Admit that Mr. Smith requested payment under Exhibit 1 but

deny that there was ever a valid and enforceable contract as

alleged in Paragraph 46.  Admit that defendants advised Mr. Smith that

they refused to accept the terms of any alleged contract.  Defendants state

that Paragraph 46 also contains a legal conclusion to which no answer is

required.  Defendants deny the remaining allegations contained in

Paragraph 46.

47.     As a result of Mrs. Calabrese and the Estate's anticipatory breach, Mr. Smith has suffered damages in an amount in excess of $75,000.00.

**ANSWER:**     Denied.

## COUNT III

### (Unjust Enrichment)

48.     Mr. Smith incorporates the allegations contained in Paragraphs 1 through 47 as though fully set forth herein.

- 16 -

**ANSWER:** Defendants incorporate their answers to Paragraphs 1 through 47 as set forth herein.

49. Mr. Smith has worked on Mr. Calabrese's behalf concerning the data relay and other patents for over 20 years.

**ANSWER:** Defendants are without information or knowledge sufficient to form a belief as to the truth of Paragraph 49.

50. The legal services provided by Mr. Smith to Mr. Calabrese conferred a benefit upon Mr. Calabrese in an amount in excess of $75,000.00.

**ANSWER:** Denied.

51. Mr. Calabrese, his Estate, and Mrs. Calabrese were aware of, and had knowledge of the benefits conferred upon Mr. Calabrese and subsequently his Estate.

**ANSWER:** Defendants are without information or knowledge sufficient to form a belief as to the truth of Paragraph 51.

52. The Estate and Mrs. Calabrese's acceptance and retention of the services provided by Mr. Smith, and the benefits resulting therefrom make it inequitable for the Estate and Mrs. Calabrese to retain those benefits without payment of their value.

**ANSWER:** Denied.

## COUNT IV

### (Conversion)

53. Mr. Smith incorporates the allegations contained in Paragraphs 1 through 52 as though fully set forth herein.

**ANSWER:** Defendants incorporate their answers to Paragraphs 1 through 52 as

set forth herein.

54.     Mr. Smith and Mr. Calabrese entered into the Contract for the payment of services provided to Mr. Calabrese by Mr. Smith.  Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents.

**ANSWER:**     Denied.

55.     Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

**ANSWER:**     Denied.

56.     Mrs. Calabrese, as Executrix of the Estate of Mr. Calabrese, was made aware of the existing Contract between Mr. Smith and Mr. Calabrese and has acknowledged the same in Exhibit 2.

**ANSWER:**     Defendants state that Mrs. Calabrese was made aware of Exhibit 1 but
               deny that there was ever a valid and enforceable contract between Mr.
               Calabrese and Mr. Smith.  Defendants further deny that Exhibit 2
               acknowledged any valid and enforceable contract between Mr. Calabrese
               and Mr. Smith.  Defendants further state that Exhibit 2 was a settlement
               offer made for the purpose of compromising Mr. Smith's claim and that
               Exhibit 2 is irrelevant and inadmissible at trial under Federal Evidence
               Rule  408.

57.     Mrs. Calabrese, as Executrix of the Estate of Mr. Calabrese, is under an obligation to fulfill the Contract made between Mr. Calabrese and Mr. Smith.

**ANSWER:**     Denied.

- 18 -

58.    The Estate and Mrs. Calabrese are currently in possession of money legally and justly owed to Mr. Smith under the Contract.

**ANSWER:**    Denied.

59.    The retention of such sums by the Estate and Mrs. Calabrese, which are justly and legally due Mr. Smith, was not previously agreed upon, was intentional, without permission or justification, and constitutes conversion of Mr. Smith's property.

**ANSWER:**    Denied.

60.    As a result of Mrs. Calabrese and the Estate's conversion of Mr. Smith's property, Mr.. Smith has suffered damages in an amount in excess of $75,000.00

**ANSWER:**    Denied.

## COUNT V

### (Accounting)

61.    Mr. Smith incorporates the allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

**ANSWER:**    Defendants incorporate their answers to Paragraphs 1 through 60 as

set forth herein.

62.    On or about March 21, 2001, Mrs. Calabrese was appointed Executrix of the Estate of Mr. Calabrese.

**ANSWER:**    Admitted.

63.    Under the terms of the Contract, Mr. Smith is entitled to a 30% contingency of all net recoveries related to the data relay patents, for Mr. Smith's legal services rendered.

**ANSWER:**    Denied.

- 19 -

64.    At the time of Mr. Calabrese's death, there was due and owing to Mr. Smith compensation of 30% of all net judgments and settlements received by Mr. Calabrese with respect to his data relay patents.  Since Mr. Calabrese's death, there is due and owing 30% of all net judgments and settlements received by the Estate with respect to Mr. Calabrese's data relay patents.

**ANSWER:**    Denied.

65.    Mr. Smith has fully performed, and continues to fully perform, all of his obligations under the Contract between Mr. Smith and Mr. Calabrese.

**ANSWER:**    Denied.

66.    Mrs. Calabrese and the Estate have failed to compensate Mr. Smith in accordance with the terms of the Contract, and have failed to provide a full and proper accounting of all sums received by the Estate arising from the data relay patents.

**ANSWER:**    Defendants admit that Mr. Smith has not been compensated and has not received any portion of the recovery amounts but defendants deny that there was ever a valid or enforceable contract between Mr. Smith and Mr. Calabrese.  Defendants deny the remaining allegations of Paragraph 66 and state that no accounting to Mr. Smith has been requested or is required from the Estate.

67.    Since Mrs. Calabrese's appointment as Executrix of the Estate, Mr. Smith has repeatedly requested payment and an accounting of the foregoing sums.  Defendant Mrs. Calabrese has refused without reason or justification to make any attempt to pay Mr. Smith his just compensation, or to make a full accounting of the sums above described.

- 20 -

**ANSWER:**    Defendants admit that Mr. Smith has requested payment of money from the

Estate. Defendants deny the remaining allegations of Paragraph 67.

**WHEREFORE**, Defendants pray that the Court enter judgment of dismissal in their

favor, award costs to them and grant such other relief as is just and reasonable.


## AFFIRMATIVE DEFENSES

1.    The Amended Complaint fails to state a claim upon which relief may be granted.

2.    Any alleged agreement or contract between Mr. Calabrese and Mr. Smith is invalid

and unenforceable pursuant to Rule 1.5(a) of the *Pennsylvania Rules of Professional Conduct*

because the requested fee constitutes an unreasonable and excessive attorney's fee for Mr. Smith's

time and labor expended on Mr. Calabrese's behalf.

3.    Any alleged oral agreement or contract between Mr. Calabrese and Mr. Smith is

invalid and unenforceable pursuant to Rules 1.5(b) and (c) of the *Pennsylvania Rules of*

*Professional Conduct* because any contingency fee agreement between lawyer and client must be

in writing at the time of the original representation or original agreement.

4.    Plaintiff unduly influenced Mr. Calabrese into signing Exhibit 1 based upon his

attorney-client relationship with Mr. Calabrese and because there was no independent legal review

of Exhibit 1.

5.    Exhibit 1 does not constitute a valid or enforceable agreement or contract because

- 21 -

at the time of signing there was no consideration.

Respectfully submitted,

**The Estate of Frank A. Calabrese and Kathleen Calabrese, Executrix of the Estate of Frank A. Calabrese, and Kathleen Calabrese, Individually**

By: _____
       One of Their Attorneys

Dated: 2/28/02

Lee Swartz
Stephen Greecher
Tucker Arensberg & Swartz
111 North Front Street
P.O. Box 889
Harrisburg, Pennsylvania  17108-0889
(717) 234-4121

Of Counsel:
Michael T. Hannafan
Nicholas A. Pavich
Michael T. Hannafan & Associates, Ltd.
One East Wacker Drive
Suite 2710
Chicago, Illinois  60601
(312) 527-0055

- 22 -

# CERTIFICATE OF SERVICE

AND NOW, this _28th_ day of FEBRUARY, 2002, I, Jacquelyn A. Zettlemoyer, Secretary to Stephen M. Greecher, Jr., of the law firm of Tucker Arensberg & Swartz, hereby certify that I have this day served the within Memorandum by depositing a true and correct copy of the same in the United States Mail, postage prepaid, at Harrisburg, Pennsylvania, addressed as follows:

Gary C. Duvall, Esquire
Miles & Strockbridge, P.C.
600 Washington Avenue, Suite 300
Towson, MD  21204-3965

Jack M. Stover, Esquire
P. Kevin Brobson, Esquire
Buchanan Ingersoll, P.C.
213 Market Street, 3rd Floor
P. O. Box 12023
Harrisburg, PA  17108-2023

Michael T. Hannafan, Esquire
Nicholas A. Pavich, Esquire
Michael T. Hannafan & Associates, Ltd.
1 East Wacker Drive, Suite 2710
Chicago, IL  60601

Joel R. Burcat, Esquire
Kirkpatrick & Lockhart, LLP
Payne Shoemaker Building
240 North Third Street
Harrisburg, PA  17101-1507

*Jacquelyn A. Zettlemoyer*
Jacquelyn A. Zettlemoyer
Secretary to Stephen M. Greecher, Jr.

41947.1